OPINION.
Scofield, J.,
delivered the opinion of the court:
In this case the parties are wide apart. The demands of the claimant, according to his amended brief, amount to $15,017.78. The defendant, while contesting them all except $4,002.02, sets up counter-claims amounting to $13,049.30. In disposing of the disputed items we are required to revise and rejudge the *677 decisions, settlements, and allowances made by the Board of Public Works, or by the Commissioners, engineers,, and auditor of the District, or by the Board of Audit. The accounts are numerous and stale,, and the evidence scanty, confused, and contradictory.
In matters of counter-claim the burden of proof is upon the defendant. Evidence that would not justify a finding for the claimant were he in the affirmative of the issue may still be too weak to justify a finding against him where the defendant is in the affirmative. Under this rule we have been constrained to leave undisturbed payments- of a questionable character which have been authorized by some of those officers.
The three items of claim set out in finding Y are not in controversy. They amount to $4,002.02.
The first item in dispute is dependent upon the construction to be given to claimant’s agreement to “receive the prices established and paid by the Board of Public Works” in the several extensions of contract No. 835, taken in connection with the modification presented in finding II. Contract No. 835 is in finding I, and its many extensions in finding III. The claimant contends that all these extensions are brought under the 20 per cent, modification, and for all sewer work done under them he is entitled to 20 per cent, upon the prices allowed in the original contract No. 835. The defendant has already paid all but the 20 per cent. The 20 per cent, additional on the work done amounts to $5,530.69. The following is the modification :

Extension of contract.

No. 835.
It is hereby agreed that this contract, .with its various terms, conditions, and stipulations (except as respects the time of execution), shall he modified and extended so as to embrace an increase of twenty per centum upon the prices in the foregoing contract.
Witness our hands and seals the eighteenth day of October, A. D. 1873.
Here is one of the extensions. So far as this question is concerned, they are all alike:
Extension of contract Eo. 835.
June 17, 1875.
For and in consideration of the stipulations hereinafter contained, it is agreed, by and between the Commissioners of the District of Columbia and *678 Owen O’Hare, that contract No. 835 in tlie series of contracts made by the Board of Public Works of the District of Columbia be,' and the same is hereby, extended, with its various terms, conditions,' and stipulations, to embrace the following works viz: Lay and put down a 12-inch pipe-sewer in the alley in the square No. 278.
It is further agreed that the said Uwen O’Hare shall receive the prices established and paid by the Board of Public Works for work of similar character; provided that payment shall be made in the bonds issued by the sinking-fund commissioners of the District of Columbia, under and by virtue of section 7 of the act of Congress approved June 20, 1874, which bonds shall be accepted and received at their par value.
We do not understand that tbe “prices established and paid by the Board of Public Works” refer simply to the prices agreed upon in contract No. 835, either by itself or with its modification. Independent of that particular contract, the Board had established a scale of prices, as shown in finding IX, to which that contract itself conformed. If it had been the intention to pay the prices of No. 835, with the 20 per cent, modification, it was not only unnecessary, but confusing, to insert the words “prices established and paid.” They seem to have been inserted to avoid such a conclusion. If the parties had so agreed, they would most certainly have added “ with 20 per cent, additional.”
At that time claimant had two other contracts, as appears in finding IY, dated August 13, 1873, and September 1, 1873. They were for sewer work at the prices named in the original of No. 835. He did not even request to have the prices increased. He made another contract for similar work December 1, 1873, at the same prices. These contracts also had extensions in which it was stipulated that claimant should “receive the prices established and paid by the Board of Public Works,” not the prices agreed to in No. 835. That contract conformed to the standard prices, but it did not establish them. At that time the claimant himself must have understood the extensions as the defendant now understands them, for he settled all this work at the established prices, not only without complaint but without any suggestion that he was entitled to 20 per cent. more. This item of the claim must therefore be rejected. In arriving at this conclusion, we consider the modification as it stands in the findings. The question as to its reformation is discussed in another place.
The second item of claim consists of an alleged undermeasure *679 ment of tbe excavation in sewer trenchés. The facts appear in-finding IY. For pipe sewers, the width of the trenches was not. definitely fixed by contract, nor by the subsequent direction of the engineers; nor was it the practice of the engineers to measure the amount of excavation by the size of the trench. They measured or calculated according to an arbitrary rule, called in engineering parlance a constant. The constant adopted and followed by the engineers, under the Board of Public Works assumed the trench to be 20 inches wider at the bottom than the pipe, with a slope upward and outward of one foot in ten. To the contractor a narrow trench had some advantages and some disadvantages. He had to move less earth, but the danger of caving was increased and the safety and comfort of the workmen diminished. He might have his choice, but, whether wide or narrow, by this constant the trench yielded the same amount of measured excavation. Under contract No. 835 the claimant made narrow trenches, but' during the administration of the Board of Public Works the excavations were measured by this constant and he was paid accordingly. At the time the Board was abolished there was some of this excavation not yet measured. The Commissioners, under the advice of Lieutenant Hoxie, adopted a different constant, arbitrary like the other, but approximating more nearly the actual excavation. By this constant claimant’s allowance for excavation was greatly diminished. He remonstrated earnestly, but finally accepted the amount offered.
By the terms of the contract the parties were to abide the measurement of the engineers, but this, as we held in the Neitzey Case (17 C. Cls. R., 111), is not conclusive. The claimant having incurred the danger and inconvenience of narrow trenches while the former constant was in practice, was entitled to be paid by it for all work done prior to the change. The amount to be allowed is $309.55.
The sewer excavations subsequent to the change of constant were under extensions made long after. In these he contracted with a full knowledge that excavations were to be measured by the Hoxie constant, and has no right to complain.
The claim of $148 for lowering the water main on Beall street a second time, and the claim of $93.67 for the difference between the amount paid and the contract price for two traps and basins, as shown in finding YI, are proper charges.
*680 The claim for hauling curb-stone from Sixth street wharf to Georgetown and the claim for 177 yards of cobble-stone, on the facts presented in finding YIII, and other claims, amounting in all to $1,089.35, on the facts presented in finding VII, should not be allowed.
counter-claims.
In the first item of the counter-claims the defendant seeks to recover back $2,639 paid to the claimant for alleged excess in measurement of sewer excavation. Until the Commissioners came into power the claimant was allowed for narrow trenches, by a constant adopted by the engineers for the measurements of his work, more than the actual amount of excavation as shown in finding IV. In.this there was no fraud on the part of the claimant and no mistake of fact on the part of the engineers. After the Commissioners came in the constant was changed, but this work was done, the amount understandingly calculated by the engineers, and allowed by the Board of Public Works before the change. The question is more fully discussed in another place. As there stated we think the claimant is entitled to this measurement for all work done before the change. This item of the counter-claim is not allowed. .
By the second item of the counter-claim the defendant seeks to recover back $5,929.89 paid the claimant for shoring claimed to have been left in the trenches. This sum was paid at different times on the report and certificate of the engineers,'approved by the Commissionei s. The defendant alleges that the certificates were false and the payments were made in mistake of fact. As the amounts have been paid, and, if the certificates are true, properly paid, it devolves upon the defendant to prove them false. If the shoring was left in the trenches the payments were properly made; if not, they should be refunded. In the conflict of evidence the court has not been able to find as a fact, as appears in finding XII, that the engineers made false certificates, nor that the shoring was not left in the trenches. This item of counter-claim is therefore not allowed.
Third. The claimant was paid by the Board of Public Works $681.75 for excavation caused by caving of the trenches;, also, $838 in excess of 40 cents a cubic yard for excavation in made *681 ground, and calculated at 60 cents a cubic yard. The defendant contends that these two sums were paid in violation of article 6 of the specifications and the agreement for 40 cents a cubic yard for excavations, and should be refunded. The facts are stated in finding XE. It does not appear whether the caving was caused by “the action óf the elements” or by some fault of the defendant. By the terms of the contract claimant was to be paid only 40 cents a cubic yard for excavation, but the Board rate for made ground was 60 cents a cubic yard. The engineers certified to both bills, and the Board of Public Works approved them, for what reasons does not appear. It might have been for some action, fault, or néglect of the defendant. It does not appear to have been paid in any mistake of fact, and cannot be recovered back.
The fourth item of counter-claim is based upon the facts set out in finding XIII. \
In the summer of 1873 the claimant, by the oral direction of Governor Shepherd, furnished materials and laid water mains on Eighth, Ninth, Tenth, and H streets. He made out and presented au itemized bill at prices alleged to have been agreed upon between Governor Shepherd and himself. The bill was considered too high by the Board of Public Works, and was reduced to conform to prices established and paid by them for work and materials of a similar character. The bill thus reduced' was paid to and accepted'by the claimant without objection. The amount thus paid was a fair and reasonable compensation for the work and materials. The agreement of Governor Shepherd for higher rates, if any such were made, was entirely void. (Neuchatel Paving Company v. the District of Columbia, 17 C. Cls. R., 386.) Subsequently the claimant presented two bills, one of $301.20, and the other of $703.35, growing out of the same transaction, the most of which had been disallowed and rejected from his original bill, and all of which had been included in the settlement and paid for at fair and reasonable rates established by the Board. These two bills, amounting together to $1,004.55, not having been again acted upon by the Board, were presented by the claimant to the Board of Audit and paid in mistake of fact. In the opinion of the court the defendant is entitled to recover back this amount.
The fifth item of counter-claim grows out of an alleged mistake in the modification of contract No. 835. No work was *682 embraced in that contract except the laying of sewers. Part of the sewers were to be laid in streets and part in alleys. The contract is dated August 12,1873. The modification, which is dated October 18,1873, originated, as appears in finding II, in the following manner: October 13,1873, the claimant addressed to the Board a letter in the nature of a petition, requesting that he be allowed an additional “price for sewering in alleys in squares 397, 398, 420, 421, 422, 444, 445, and 446.” He gave as the reason of this request, that the alleys were so narrow that there was no room to pile the earth; that it had to be carried off and afterwards brought back to fill the trenches. On the next day the Board referred it to the engineer, who reported on the 16th and recommended “that in those narrow alleys where dirt can hardly be piled, the regular price be increased 20 per centum.” On the 17th the Board resolved to increase the price 20 per centum in these alleys. They notified the claimant on the same day, in which notice they repeated the numbers of the squares-in which the alleys were. They also directed the engineer to have the modification prepared. On the 18th the engineer informed the contract clerk in writing that the “Board had increased the rate for sewering in alleys in squares 397, 398, 420, 421, 422, 444, 445, and 446 20 per cent.,” and directed him to have the amendment prepared. On the same day the modification was sent in to the Board from the contract clerk. It was on a printed blank on the top of a half sheet of foolscap paper, and the blanks for the signatures were upon the back. Without careful examination, the parties signed it in mistake, supposing that it was written according to order. After the order to amend the contract was given, there had been no consultation among themselves and no communication with the claimant before signing. The claimant’s signature was scarcely necessary. Stripped of unnecessary verbiage, it is a simple concession to the claimant. It gave him 20 per cent, additional for work he was already bound to do without it. It was without consideration appearing on the paper, and his signature was only necessary to bind him not to refuse the 20 per cent. But no objection is now made to it on that account.
We are therefore of the opinion that the contract should be reformed by inserting after the word “prices” the words and figures following: “For sewering in alleys in squares 397, 398, *683 420, 421, 422, 444, 445, and 446.” The Board of Public Works paid for all sewer work done in these alleys, with the 20 per cent, addition. Certificates of measurement and amounts due, according to the prices in the original contract for sewer work done on the streets, were also Blade out by the engineers'. These certificates were laid before the Board of Audit. This Board, after examining the modification, and, unaware of what was behind it, added the 20 per cent., and it was thus paid. This was done in mistake of fact, and by the terms of tbe reformed contract the defendant is entitled to recover it back. The amount is $1,007.82.
The court, upon due consideration of the premises, order, adjudge, and decree that the contract between the parties, known as the extension of contract No. 835, and dated October 18,1873, be reformed by inserting after the word “prices” the words and figures following, to-wit: “For sewering in alleys in squares 397, 398, 420, 421, 422, 444, 445, and 446.”
And it is further ordered, adjudged, and decreed that the claimant be allowed upon his several claims the sum of $4,553.24, and that the defendant be allowed upon the several counterclaims the sum óf $2,141.43; and that upon the whole case the claimant have and recover from the defendant the balance of his claims over and above the counter-claims in the sum of $2,411.81. . -